ELLIS, Judge.
The three appellants, whose cases were consolidated for trial, have appealed from a ruling of the Commission affirming their discharge by J. Hadley Heard, Administrator of the Division of Employment Security, in accordance with letter of removal dated October 19, 1954 and we quote the material portion of this letter:
“ ‘You are hereby advised that a decision has been reached to terminate your services with this Department because evidence available to this Department discloses that you submitted a false and fraudulent claim for travel expenses during the period May 15, 1950 — June 8, 1950. This termination will be effective at the close of business on June 24, 1953.
“ ‘In reaching this decision, careful consideration was given to your sworn statement of June 11, 1953, along with other information and evidence available to this Department. It was recognized that you may have received commitments for the reimbursement of ftmds in the approximate amount for which you submitted a false and fraudulent claim and that coercion and intimidation may have been exercised in causing you to incur expenses for which you desired reimbursement, but the conclusion that you had submitted a false and fraudulent expense claim was inescapable. Of necesshy, consideration was given to the effect of this act on public opinion and employee morale. Accordingly, your removal is considered to be for such cause as to be in the best interest of this Department.
“ ‘As you have the right to appeal to the Civil Service Commission, there is attached for your information a copy of Chapter 13 of the Civil Service Rules.
s/ J. Hadley Heard
Administrator’ ”
(Emphasis added)
The'facts in the three cases under consideration are substantially and materially identical with those in the case of Colvin v. Division of Employment Security, La.App., 132 So.2d 909, which was decided by this court and in which the Supreme Court of the State of Louisiana denied certiorari. In that case, as in this, relator had appealed from a ruling of the Commission affirming his discharge, which grew out of one of the same incidents and the charge was the same, of filing a false and fraudulent expense account. Colvin obtained a severance or separate trial from the relators herein. The facts in the Col-vin case show that in the year 1950 he and relator herein, A. C. Wilkinson, were selected to attend a convention in Omaha. Both said they could not afford to make the trip and upon the assurance and insistence of Mr. Marvin A. Thames, then Administrator of the Department, that they go and their expenses would be paid by the agency as he had cleared that question with the Regional Office of the United States Department of Labor, Bureau of Employment Security, as under the agency rules in effect at that time, advance written authority was required for such a trip to be made at agency expense, they proceeded to the convention in Omaha, Nebraska. Colvin and Wilkinson returned from the Omaha trip about May 1, 1950. Subsequent to their return, the facts as they affect the relators in the case now at bar on this appeal are practically identical with those in the Colvin case, supra. This court in the Colvin case held that while the findings of fact by the Commission, when based on evidence supporting the discharge of an employee for a valid cause, are not subject to review by .this court, which we must do under the law, as appellate courts are restricted upon appeals from the Civil Service Commission to questions of law, nevertheless, taking the entire testimony and facts as found by the Commission, Colvin’s “dismissal” was without valid cause for the reasons therein stated, namely that he had filed a false *676 and fraudulent claim for travel expenses during the period May 15, 1950 — June 8, 1950.
While we feel that the judgment of this court in the Colvin case, supra, is controlling and decisive as the facts therein, and herein, are on all material questions of fact identical, we deem it necessary for a clear understanding of this decision that we proceed to a full discussion of these particular cases as they affect relators herein.
The facts of the case as found by the Civil Service Commission, as applicable to each of the relators herein, are as follows:
“FINDINGS OF FACT

"A. Boucher

“At the time of his dismissal, Boucher had attained permanent Civil Service status as an Employment Security Claims Investigator in the State Division of Employment Security. He had served the Division meritoriously since September 5, 1946, and he has an unblemished record for character and service during this period.
“In May, 1950, Marvin E. Thames, then Administrator of the Division, requested Boucher to attend an I.A.P. E.S. Convention in Long Beach, California. Boucher refused as he was unable to afford the expense of the trip. Thames advised Boucher that the trip could be made at agency expense. Under agency rules in effect at that time, advance written authority from the Dallas Regional Office of the United States Department of Labor, Bureau of Employment Security, was required for such a trip to be made at agency expense. Thames told Boucher that the Regional Office had authorized this trip, and Boucher did not question the authority. There is no evidence that Boucher knew of the aforementioned agency rules. Thames’ testimony that the Regional Office granted its authority by telephone prior to the departure of Boucher has not been contradicted. An advance of $350 for expense was authorized by Thames and received by Boucher, who then attended the Long Beach Convention. Upon their return from the convention, Thames advised Boucher that the Regional Office had withdrawn its approval, and in Boucher’s presence Thames called the Dallas Office and spoke to one L. M. Crawford, who suggested that Boucher execute an expense report for a Dallas trip, which would then be approved by the Regional Office. This Boucher refused to do. Ultimately, at the suggestion of Thames, Boucher prepared a travel expense report, showing certain trips in Louisiana which actually had never been made by Boucher. Annexed to this report were receipts with which Boucher was not familiar. This report was apparently signed by Boucher, although Boucher testified that he did not think he signed it. Boucher did endorse the check issued by the Division on the strength of the report. Boucher actually spent, on the Long Beach trip, the amount reported on the false travel expense report, which was the basis of his discharge. He refunded a portion of this amount to the Division on or about December, 1950, and the balance he refunded by certified check on or about May 22, 1953, and the Division of Employment Security presently is holding this check, never having cashed same.

"B. Wilkinson

“At the time of his dismissal, Wilkinson had attained permanent Civil Service status as an Employment Security District Supervisor in the State Division of Employment Security. He had served the Division meritoriously since October 5, 1937, and he has an unblemished record for character and service during this period.
*677 “In April, 1950, Marvin E. Thames, tiren Administrator of the Division, requested Wilkinson to attend a Biannual Convention of the A.S.F.S. & M.E. being held in Omaha, Nebraska. Wilkinson refused as he was unable to afford the expense of the trip. Thames advised Wilkinson that the trip could be made at agency expense; whereupon Wilkinson went on the trip to Omaha. Upon his return he was directed by Thames to render an expense account showing a trip to Dallas, Texas, not to Omaha, Nebraska, which Wilkinson did and was reimbursed by the agency for his expenses on the basis of a travel report signed by him and approved by Marvin E. Thames, showing travel to Dallas from Lake Charles covering the period 4-23-50 to 4-30-50.
“In May, 1950, Wilkinson was advised by Thames that he again wanted him to make a trip at agency expense, this time to Long Beach, California, to attend the I.A.P.E.S. Convention. Wilkinson made the trip and upon his return was again directed by Thames to submit a travel report to Dallas, Texas, instead of to Long Beach, California. Wilkinson submitted such a travel report showing a trip he did not take from Lake Charles to Dallas, Texas, and return covering the period 5-25-50 to 6-10-50 which report was approved by Thames and paid by the agency. Prior to leaving for Long Beach, California, an advance of $150 for expenses was authorized by Thames and received by Wilkinson and this amount was deducted from his voucher when he received settlement of his purported travel expense to Dallas, Texas.
“Wilkinson actually spent on his trip to Omaha the amount he claimed on the false travel report he rendered showing a trip to Dallas, Texas, covering the period April 23, 1950, to April 29, 1950, and actually spent on his trip to Long Beach California, the amount he claimed on tlie second false travel report he rendered showing another trip to Dallas, Texas, covering the period 5-25-50 to 6-10-50'. On or about May 22, 1953, Wilkinson refunded to tlie agency by certified check tlie amount he had been paid for the purported trip to Dallas, Texas, which covered his actual expenses to Long[1] Beach, California, and the agency is holding this check, never having cashed it. There is no evidence to show that he has made or attempted to make restitution of the amount he was paid for the first Dallas expense report.

"C. Gueymard

“At the time of his dismissal, Guey-mard had attained permanent Civil Service status as an Employment Supervisor I in the State Division of Employment Security. He had served the Division meritoriously since March 16, 1936, and he has an unblemished record for character and service during this period.
“In May, 1950, Gueymard planned a trip to Long Beach, California, in his personal automobile to. attend the LA. P.E.S. Convention and, although not himself a delegate, was providing transportation for Mr. Macalusa, an official delegate and representative of the Division of Employment Security. They planned to travel from New Orleans to Long Beach by way of Houston, Texas. Gueymard did not contemplate, while first planning the trip with Macalusa, that he would be reimbursed by the agency any portion of his expense. However, at the request of Marvin E. Thames, then Administrator of the Division, he changed his plans and drove to California by way of Dallas, Texas, instead of Houston, so as to pick up a delegate to the convention who lived in Dallas. This change in plans was requested by Thames and with the approval of the *678 Deputy Director of the Regional Office of the Bureau of Employment Security. Gueymard was told by Thames that he could claim reimbursement of expenses from New Orleans to Dallas and return. An advance of $250 for expenses was authorized by Thames and received by Gueymard before leaving Louisiana. Gueymard and his wife and Mr. Macalusa and his wife drove to Dallas where they were joined by the Texas delgate who accompanied them to California.
“Upon his return from the convention and other points on the West Coast which he visited, Gueymard was advised by Thames to execute an expense report showing a trip to Dallas, Texas and include thereon expenses for four or five days in Dallas, but to show dates different from the dates he was in Long Beach, California.
“He then filed a fraudulent expense report showing a trip on June 19, 1950, claiming reimbursement for use of his personal automobile at 7$ per mile plus meals and tips incurred while on the purported trip. While the evidence shows that he did travel to Dallas on his way to California, the evidence is equally clear that he did not remain in Dallas the number of days shown on his travel report and he did not make any trip at all to Dallas on the dates shown on his travel report.
“The expense report which he filed was approved by Thames and an agency check was written and delivered to Gueymard who endorsed' it back to the agency. Gueymard also paid the agency the difference, between' the amount of this check and the amount of his travel advance. On or about May 22, 1953, Gueymard refunded to the agency the amount he had been paid for the Dallas trip and according to the record the certified check covering the refund is being held by the Division of Employment Security which has never cashed it.”
Under the above set of facts, the Commission found that the action of the employing authority in dismissing each of the relators from his employment on October 29, 1954 was for both a reasonable and legal cause.
There is np dispute as to the material facts in these cases which was also true in the Colvin case. The relators herein felt they were financially unable to make the trips involved in these expense accounts — Wilkinson to Omaha and California and the other relators-to California and that' they only went after being assured by the Administrator of the Division, Mr. Marvin E. Thames, that he had cleared the question of expenses with the federal agency in Dallas and that they could make the trip at agency expense. In accordance with this assurance, upon the insistence of Thames, they were advanced expense money and made this trip. Some time after the'ir return, the question of filing a detailed expense account came up, the Administrator informed them that the federal department in Dallas had in effect reversed itself and that expenses to California could not be approved, but he had discussed the matter with this agency, which in fact the record fully proves, and these parties were to file expense accounts as if they had gone to Dallas, Texas rather than Long Beach, California. All of them objected to this but Thames was so insistent that they felt to refuse would be probably fatal to their future as employees and as the record shows each had a long and meritorious service up to that time. They had reached an age of service and years that meant a great deal to their future security so they put Dallas on the expense account. Otherwise, the account was ’ completely correct in that it contained nothing but the legitimate expenses that they had incurred in going to Long Beach, California and return. The record shows that the receipts attached to support Boucher’s expense account were *679 not even made up by him and he was not familiar with them. It is evident that Mr. J. Hadley Heard, the Administrator, who was appointed after a change in administrations, was quite familiar with the truth concerning the filing of the expense account by these relators which stated Dallas rather than Long Beach, California, for in his letter of dismissal he states “ * * * that coercion and intimidation may have been exercised”. There is also positive testimony in the record that Heard was orally apologetic in talking to relators about their dismissal. He put it on the ground that he was on the hot seat and under great pressure. All in all, it doesn’t appear from his testimony that he actually and really believed they were guilty of any fraud.
Furthermore, everybody in the Department knew about the whole thing, there was nothing hidden and the superiors who had to approve these accounts did so despite the fact that they were familiar with the situation, and these same employees continued in their employment without any question.
We believe that our discussion in the Colvin case is applicable and controlling in the cases under discussion and we quote therefrom:
“The basis of the decision of the Civil Service Commission in dismissing appellant was that he submitted ‘a false and fraudulent claim for travel expenses.’
“(1) Upon our examination of the term ‘fraud’ or ‘fraudulent’ we find that two elements are essential to constitute legal fraud, the intention to defraud and loss or damage or a strong probability of loss or damage. Slocomb and others v. Real Estate Bank of Arkansas, 2 Rob. 92. A mere misrepresentation or in this instance, a false or incorrect account, is not synonymous with fraud as used in the legal sense. Buxton et al. v. McKendrick et al., 223 La. 62, 64 So.2d 844.
“The necessity for the combination of the two elements is emphasized in L.S. A-Civil Code article 1847 in defining fraud as applied to contracts as:
“ ‘Fraud, as applied to contracts, is the cause of an error bearing on a material part of the contract, created or continued by artifice, with design to obtain some unjust advantages to the one party, or to cause an inconvenience or loss to the other.’
“(2) The uncontroverted facts present in the record and those findings of fact found by the Commission reveal that appellant had been selected to represent his agency at a meeting in Omaha, Nebraska, and that his travel expenses to attend said meeting would be paid by the agency. When he returned from the trip he filed the questioned account, including therein the actual expenses incurred by him in his trip to Omaha, but at the insistence and order of Marvin E. Thames, the then Administrator of the Division, he represented in the account the fact that the expenses were incurred in connection with a meeting in Dallas rather than in Omaha.
“Nowhere in the record is it shown that by the submission of the account did he acquire a profit or monies to which he was not entitled, nor is there any showing that by being reimbursed caused ‘an inconvenience or loss’ to the agency. There is not one iota of evidence in the record to even indicate that at the time he was selected for the trip to Omaha that such expenses incurred by him on said trip were not validly authorized and there is no evidence whatever that he had conspired with the Administrator of the agency to defraud, or that appellant alone intended or by artifice conceived a plan to gain an unjust advantage by the filing of the account. Though it is true that the account so filed, showing a trip to Dallas, Texas, is false in that respect, if the misrepresentation was *680 made without the intention to defraud on the part of appellant and if the error did not gain appellant an advantage to •which he was not due, it is evident that neither of the elements of fraud have been satisfied and thus the incorrect account is not fraudulent.
'“Upon his severance from the Civil Service position the record reveals that there was deducted from his accrued earnings the $206.90 which was the total amount of the items expended by him on his trip to Omaha and itemized in the erroneous account filed representing that the items of expenses covered the trip to Dallas, Texas.
“We are of the opinion that upon appellant’s reinstatement in his position, upon submission of a corrected travel account itemizing the expenses incurred by him on his trip to Omaha, he would he entitled to reimbursement of the amount of his expenses, which in itself is recognition by us that the questioned account was not fraudulent.”
In the Colvin case Commissioner E. B. Robert dissented from the majority opinion ■of the Commission and we took the liberty of quoting from this dissenting opinion. In the cases- now before this Court, only three members of the Civil Service Commission, which constituted a majority, held that rela-tors’ dismissals for submitting “false and fraudulent claims for travel expenses” were for both a reasonable and legal cause and upheld their dismissals and neither Commissioner E. B. Robert, who dissented in the Colvin case, nor Commissioner Frank M. Taylor signed, approved, or concurred in, the Civil Service Commission’s opinion and ruling upholding the dismissal of these re-lators. We believe that what Commissioner Robert said in his dissenting opinion in the Colvin case is also completely applicable to the cases now under consideration and we re-quote:
'“ ‘It is utterly inconceivable to me that this Commission is empowered to determine the legality of the cause, yet it is prohibited from considering the circumstances surrounding the conduct of the employee which formed the basis of the disciplinary action.
“ ‘In my opinion, a subordinate employee must rely on the representations of his superiors and in this particular case, Colvin was assured both by his immediate supervisors and the administrator that the manner in which the expense report was to be submitted was the correct one. As an added persuasive factor, these immediate supervisors had submitted expense reports similar in form as the one Colvin was directed to submit.
“ T can readily conceive that reasonable men may differ as to the propriety of submitting an expense account with incorrect data under these circumstances; however, I cannot condemn a person who does such under the direction of his superiors, particularly when it is a proven fact that the money was actually spent on authorized travel directly associated and in the course of the employee’s duties.
“ ‘It is difficult to understand how the ■dismissal of this employee was instrumental in maintaining the standards of effective service although I will readily concede that the removal of those who were solely responsible for the predicament in which this appellant finds himself may accomplish that purpose. Yet it has been represented that the administrator upon whose representations Colvin relied is presently in the public service.
“ ‘This is in no manner an attempt to rationalize the conduct of this appellant for it has not been proved to my satisfaction that he conspired to commit or committed fraud which would justify his removal from the State service.’ ”
In this record we find an interlocutory ruling of the Commission which involved the first decision of the Supreme Court in *681 these cases (75 So.2d 343) and we quote the following portion thereof:
“We are informed that the Supreme Court was requested to remand the cases to this Commission for the latter to enter a decree in accordance with the views of the court. The court declined to so act. Had it done so this Commission would then have been in a situation to enter a decree reinstating the employees and to give effect to paragraph (3) of subdivision (O) amending Section 15 of Article XIV of the Constitution which provides: ‘If any Commission after any hearing orders a dismissed or suspended employee reinstate (d), it may reinstate such employee under such conditions as it deems proper and may order full pay for lost time.’ ”
We can only interpret this as meaning that had the Supreme Court seen fit to remand these cases to the Commission, the latter “would then have been in a situation to enter a decree reinstating the employees and to give effect to paragraph (3) of subdivision (O) amending Section 15 of Article XIV of the Constitution” which refers to the power of the Commission after any hearing to order a dismissed or suspended employee reinstated and empowering the Commission to do so under such conditions as it deemed proper and “may order full pay for lost time”. The language clearly denotes that had the Supreme Court remanded the cases to the Commission in accordance with their request it would have ordered the reinstatement of these relators on the merits of their discharge on June 24, 1953[1] but they held in this interlocutory ruling that they were without authority to review or alter the decision of the Supreme Court, or to declare the effect thereof with respect to the parties litigant and that after the finality of the decision of the Supreme Court, the employing authority gave written notice of the termination of their services as of October 29, 1954 and the Commission' then proceeded to try the case on its merits under the 1954 notice.
Counsel for relators also filed a plea of prescription of one year, one termed “Retro-activity” and estoppel. These pleas have been passed upon by the Supreme Court and held to have no merit. See Domas v. Division of Employment Security of Department of Labor, 227 La. 490, 79 So.2d 857, Gervais v. New Orleans Police Department, 226 La. 782, 77 So.2d 393 and Marchese v. New Orleans Police Department, 226 La. 982, 77 So. 2d 742.
We must consider and decide the motion to dismiss the appeal as to Jules R. Guey-mard which was filed by appellee upon the ground that Gueymard died on January 23,. 1963, subsequent to the filing of his appeal: to this Court from a decision of the Civil: Service Commission, State of Louisiana,, and that this proceeding involves an action which is personal to Gueymard as he is seeking the reinstatement to his former position with full pay for lost time and that under Article 428 of the LSA-Code of Civil Procedure and Article 2766 of the LSA-Civil Code, all personal actions pending abate on the death of the party prosecuting same and that these actions, accordingly, do not survive to the benefit of his heirs. For these reasons, they request that this Court issue an order dismissing the Gueymard appeal.
The heirs of Gueymard, through the testamentary executrix of the Succession of Jules R. Gueymard, have been made party to this proceeding. It is, of course, true that the right to be reinstated was strictly personal to Gueymard and could not now be enforced because of his intervening death, however, he was also seeking to recover back pay for the period that he was illegally discharged. Actually the suit of Gueymard and other relators was and is for a judgment declaring their dismissal illegal which would then entitle them to reinstatement *682 and a money judgment for wages lost during the time of illegal suspension. The right to reinstatement was strictly personal and abated with the death of Gueymard, but not his suit for judgment decreeing his suspension to be illegal which is a prerequisite to recovery of wages or back pay during such illegal suspension, and once this has been determined in favor of relators, then the right to back pay is automatic and becomes merely a debt owed by the Division of Employment Security to Mr. Gueymard, heritable and enforceable by his heirs like any other debt, by whatever means and legal proceedings is available for enforcing the debt. The date of his death would be the terminating date of any wages due .to Guey-mard for his illegal dismissal. The motion to dismiss is therefore denied.
In conclusion, we wish to add that the plan to substitute Dallas for Omaha and/or Long Beach, California, was agreed upon between Thames, the Louisiana Administrator who was indicted by the federal government for conspiring with William L. Crawford, Deputy Regional Director of the Federal Bureau of Employment Security at Dallas, Texas, to defraud the United States by means of the false reports in question [2] and the same William L. Crawford, both of whom continued in their j obs. Additionally, Ed McDonald, Regional Representative at the Federal Dallas office, whose written authorization for the fictitious travel to Dallas appears in the record, as late as December 1954 continued in his job as Director of the Federal Bureau of Employment Security at Dallas. Furthermore, the Boucher travel report was “approved” by superior Jules L. Lamothe and Gueymard’s by G. Messina, their immediate superiors who also knew that the trips were not made on the dates or to the places stated. They were still in service and testified. Also, Mr. L. M. Langford, Comptroller of the agency in charge of accounting for travel expenses, was still in office at the time of the hearing for dismissal, and he frankly admitted on the trial that he was fully and “definitely” aware at all times that the travel was actually to Long Beach and to Omaha and not to Dallas and was aware of all the circumstances surrounding the trips, the expenses and the reports stating Dallas as the travel point. With this knowledge, he officially certified each travel report as “Comptroller”, certifying
“ * * . * that travel was authorized from and to the point stated; that it was on official business * * *.”
Fie testified that he did this on the authority of Mr. Thames. In fact, there is no doubt that all of these relators’ superiors knew the facts and circumstances surrounding the report and expense account which formed the basis for dismissal of relators. There was^ no effort to conceal anything or to defraud anybody and the facts show that no one was defrauded and no artifice was practiced by relators.
Accepting the facts found by the Commission herein and additional facts which might be stated in this report as proven by this record and which are not in conflict or contradiction of the facts found by the Commission, all of which is on all fours with the facts in the Colvin case, and the reasons hereinabove given we do not believe ■that these relators were guilty of filing a ■false or fraudulent claim for travel expenses in the sense necessary to constitute legal fraud as we emphasized in the Colvin case.
It is therefore ordered that the judgment appealed from is reversed, annulled, and set aside, and judgment is hereby rendered reinstating Robert R. Boucher, appellant, in his former position and there be judgment in his favor and against the Division of Employment Security for back pay from October 29, 1954 in accordance with law.
It is also ordered, adjudged and decreed that there be judgment rendered reinstating A. C. Wilkinson, appellant, in his former position and awarding him judgment in his favor and against the Division of Employ *683 ment Security for back pay from October 29, 1954 in accordance with law.
It is also ordered, adjudged and decreed that the dismissal of Jules R. Gueymard, deceased, is hereby decreed to have been illegal and that there now be judgment in favor of Mrs. Ethel Dickinson, widow of Jules R. Gueymard, Testamentary Executrix of the Succession of Jules R. Gueymard, No. 411-161 of the Docket of the Civil District Court for the Parish of Orleans, State of Louisiana, substituted party herein, and against the Division of Employment Security for back pay from October 29, 1954 through January 23, 1963 in accordance with law.
Reversed and rendered.

. The charge contained in the notices of discharge in 1953 and again in 1954 are identical “ * * * that you submitted a false and fraudulent claim for travel expenses * *

. The federal indictment against Thames was dismissed by directed verdict.