BLANCHE, Judge.
Appellant, Claud Jones, is appealing a ruling of the Civil Service Commission affirming his dismissal as a Highway Equipment Superintendent I. Mr. Jones’ dismissal was conveyed to him in a letter dated February 27,1969, and it was made effective as of March 3, 1969. The letter was signed by Dempsey D. White, Chief Construction and Maintenance Engineer of the Louisiana Highway Department. The assigned reasons for appellant’s dismissal were that he claimed and received pay for times when he was not actually working and that he claimed and collected expense reimbursements to which he was not entitled. The decision of the Civil Service Commission is hereby reversed as being based on conclusions unsupported by any evidence and as being without legal cause.
The Civil Service Commission made the following factual determinations after a hearing:
“1. Appellant reported to the Department of Highways (Exhibit Jones 2) that on each of the days February 5, 6, 7, 10, 11, 12, 13, 14, 17 and 18 he had departed from his ‘Official Station’ at 7:30 a. m. and had returned thereto at 4:00 p. m. For each of these days he claimed and was reimbursed for the cost of a meal, or a total of $14.18 for these 10 working days.
“2. Appellant did not leave his ‘Official Station’ in Jena on each of these days at 7:30 a. m. nor did he return thereto at 4:00 p. m. on each of these days.
“3. Appellant’s working day was scheduled to be ah 8-hour one; he recognized this fact, and his immediate superior, Leger, expected it of him. He did not work 8 hours each day that he reported that he had done so.
“4. On February 6 appellant was at his home in Jena by 3 p. m.; on February 7 appellant was at his home in Jena by 11:10 a. m.; on February 10 he was at his home in Jena by 1:30 *918 p. m.; on February 14 he was at his home by 11:30 a. m., and he was there at 1:15 p. m.” (Opinion of the Civil Service Commission, Record, pp. 57, 58)
Appellant had been employed at the time of his dismissal since July of 1964 as an inspector of state highway equipment. He was one of two state wide inspectors. His territory included numerous parishes and his official assigned station was Jena, Louisiana, where he maintained his residence. His immediate superior was a Mr. Carter who provided little or no direct supervision. Mr. Jones reported each week to Mr. Vandersyphen, a District Superintendent, in Alexandria, Louisiana. Mr. Vandersyphen and he discussed the equipment found to be malfunctioning during the week, and Mr. Vandersyphen made the determination as to where Mr. Jones was to conduct his inspections. The ad hoc practice had developed of inspecting equipment one Parish at a time. Each Parish was completed before moving on to the next Parish. Appellant’s work necessitated considerable traveling. He often had to seek out state equipment that was being utilized on projects. Weather conditions often determined the feasibility of conducting a proper inspection of equipment. Mr. Jones was of the understanding that he had the obligation to put in an eight hour day. However, as he explained it, the varying distances he had to travel, the difficulty in rendezvousing with equipment, and weather conditions often lengthened or curtailed a given day’s work. Mr. Jones noted that it was not his understanding that he was to stay in the field for the express purpose of merely putting in an eight hour day. He noted, for example, he would often be many miles from the next inspection point and that his proceeding to such point late in the day would be vain and useless if he arrived at quitting time for employees at that inspection point. Appellant further noted that he filled out his reports at home. Mr. Jones was paid monthly and not by the hour.
Appellant gave the following accounting of his activities on February 6th, 7th, 10th and 14th of 1969. On February 6, 1969, he was inspecting equipment in Winn Parish. He left home at 6:30 A.M. for Winnfield, Louisiana. Mr. Jones arrived in Winnfield at 7:30 A.M. He stayed in Winnfield until 2:00 or 3:00 P.M. At 3:00 or 4:00 P.M., he arrived home. Appellant asserted that on this particular day he was attempting to complete his work in Winn Parish before proceeding to the next Parish. On February 7, 1969, he proceeded to Winnfield at 6:30 A.M. From Winnfield he reported to Mr. Vandersyphen in Alexandria because it was customary to personally turn in his inspection forms on a Friday. He noted that he had stopped in Jena to pick up some inspection tickets before proceeding to Alexandria. He arrived home about 3:00 P.M. from Alexandria. On February 10, 1969, appellant again left Jena at 6:30 A.M. for Alexandria. From there he proceeded to Winnfield. Finding that all the highway employees in Winnfield were attending a co-worker’s funeral, he proceeded home since the last piece of equipment in Winn Parish could not be inspected that day. He arrived home about 1:30 P.M. or 2:00 P.M. On February 14, 1969, Mr. Jones proceeded to Alexandria. Since it was raining excessively in Alexandria, he had the radio operator in Alexandria, a Mr. Monk, call ahead to his destination, Leesville. Upon heavy rains being reported in Leesville, plaintiff proceeded home. He arrived home between 11:00 and 12:00 A.M. Appellant conceded that on the cited days he did not work eight hours per day but asserted that there were many days when he worked considerably in excess of eight hours.
Mr. Esley Smith, Repair Superintendent with the Department of Highways for Winn Parish, testified that appellant performed a good job of inspection in that parish. Mr. Smith could not recall what Mr. Jones’ activities were for February 6th, 7th, 10th and 14th. He did note that a highway employee’s funeral was conducted on February 10th and that his co-workers *919 attended the funeral. Mr. Smith observed that inspections must be conducted such that they do not interfere with highway projects.
Mr. Bill Monk, a Department of Highway Radio Operator, testified that he did call Leesville to check the weather on behalf of Mr. Jones on February 14, 1969. He further noted that all inspectors meet with Mr. Vandersyphen on Friday of each week.
Mr. E. P. Leger, Equipment Specialist II, testified that he has responsibility for the general state wide program of Highway Department equipment inspection and that he indirectly supervised Mr. Jones. Mr. Jones worked directly under the supervision of Mr. Y. D. Carter in Coushatta, Louisiana. He noted that he received no complaints concerning Mr. Jones’ performance of his job other than an anonymous letter. Mr. Leger asserted that if Mr. Jones was the object of previous complaints, he, Mr. Leger, would know about such complaints. Equipment is normally inspected in sheds when it rains. Mr. Leger asserted that on February 14th, Mr. Jones could not have properly inspected equipment in the rain or in the shed in Leesville because the shop there is too small. Mr. Leger observed that inspectors are not docked pay for working less than eight hours. It was Mr. Leger’s opinion that when Mr. Jones could not find work to fill an eight hour day, he should check with Mr. Carter.
Mr. Dempsey White, Chief Construction Maintenance Engineer, testified that when he received an anonymous letter complaining of Mr. Jones’ lax work habits, he ordered periodic checks on Mr. Jones. As noted above, those checks involved February 6th, 7th, 10th and 14th. Until the receipt of the anonymous letter, Mr. White’s appraisal of Mr. Jones’ work was that he was “performing a real excellent job.”'
Mr. Bill Young, Mr. C. A. Richards and Mr. Dennis Berry testified as to whether Mr. Jones was at home on the days in question when they drove by his home and looked for his state highway car. Such testimony is the basis for the Commission’s factual findings as to when appellant was at home.
The Civil Service Commission concluded that appellant was scheduled by the Highway Department to work an eight hour day every day. It concluded that since appellant conceded he did not work an eight hour day, such admission was justifiable cause for dismissal. The Commission also concluded that appellant had wrongfully sought reimbursement for meals on February 6th, 7th, 10th and 14th in the amount of $6.11. The Commission was of the opinion that appellant’s claim for meals between February 5 and February 18, 1969 was questionable. Concluding that the charges were legally sufficient to discharge the appellant, the Commission affirmed the discharge. Appellant contends that the lower court erred in (1) failing to confine its ruling to the allegations contained in the letter of dismissal, or to make its ruling strictly confined and responsive thereto; (2) failing to apply the rule of strict construction to the specifications and charges set forth in said letter of dismissal; (3) holding that the mere presence of appellant at his home during certain hours on February 6, 7, 10 and 14 of 1969, and the entry of eight hours on his pay roll statement for those days, per se, constitutes “falsification” of his pay roll, as alleged in the letter of dismissal, when his home was designated by the Department as his “official station” and no evidence was offered of any instructions or directives having been given him to be any other place on those particular days or under those particular circumstances; (4) holding that a mere misrepresentation or erroneous statement of the exact times he left his official station (his home) or returned thereto on official trips, on his expense voucher, constituted “submitting a fraudulent expense account”; (S) holding by implication that such errors on his expense voucher constituted a substantial or intentional abuse of his expense allowance to the detriment of the service and was of *920 sufficient seriousness to justify his summary dismissal; (6) holding as a matter of law or a conclusion of law that “Whether he made factual representation knowingly or with fraudulent intent is not the test by which such conduct is to be measured”; (7) sustaining the arbitrary and summary dismissal of the appellant when no allegation was made and no evidence was introduced on behalf of the Department or any other party to the effect that any actions or omissions on the part of the appellant were detrimental to the efficiency of the service; (8) sustaining the arbitrary and summary dismissal of the appellant when no allegation was made and no evidence was introduced to the effect that the continued employment of appellant would be a detriment to the efficiency of the service; (9) setting forth in Paragraph 3 of Page 3 of its opinion as a finding of fact that “He did not work eight hours each day that he reported that h,e had done so,” when such a finding is a conclusion of law rather than a finding of fact, and the Commission erred in such a conclusion of law when no evidence was introduced that he at any time failed to follow his instructions, written or otherwise, to the best of his ability, and in the face of uncontroverted testimony that he remained at his official station for the remainder of the day or at least until 4:00 p. m., on such days that he was obliged to return there sooner; (10) failing to take into consideration the nature of appellant’s job as set forth in the official description of the position held by appellant (Exhibit Jones 5), the size of his district, the number of units to be served, the distance between these units, the necessity of coordinating his efforts with the normal operations of the Department, as well as other practical considerations implicit in his particular job; (11) holding appellant to be “guilty of the offense charged” without finding or stating as a fact that he either deliberately “falsified his pay roll” or submitted a “fraudulent expense account” as set forth in the specifications of his letter of dismissal; and (12) refusing to allow appellant to use notes with which to refresh his memory concerning past events and dates, and erred in assigning as reasons for said refusal that such notes must have been made at the time or shortly after the events and dates in question, and such error was highly prejudicial to appellant because it confused him, inhibited him and made it extremely difficult for him to keep the sequence of events and dates in the correct order in his mind.
It is well established that factual determinations by the Louisiana Civil Service Commission are conclusive and that the courts can never question the weight or sufficiency of the evidence forming the basis of a Commission decision. La.Const. Article XIV Section 15(0) (1). Referring to La.Const. Article XIV Section 15(0) (1), our Supreme Court stated in Leggett v. Northwestern State College, 242 La. 927, 140 So.2d 5:
“Under this mandate it is the duty of the courts to accept the findings of fact made by the commission and to determine whether under such facts there exists legal cause for disciplinary action, for the Constitution, Article 14, Section 15 (N) (1), also provides that no person in the classified service who has acquired permanent civil service status shall be demoted, dismissed, or discriminated against except for cause expressed in writing by the appointing authority.”
The court in Leggett v. Northwestern State College, supra, defined legal cause for removal as follows:
“Legal cause for disciplinary action exists if the facts found by the commission disclose that the conduct of the employee impairs the efficiency of the public service. Of course there must be a real and substantial relation between the conduct of the employee and the efficient operation of the public service; otherwise legal cause is not present, and any disciplinary action by the commission is arbitrary and capricious.”
*921 The court further stated with reference to such legal cause:
“This court in Brickman v. New Orleans Aviation Board, 236 La. 143, 107 So.2d 422, in reversing the commission and ordering reinstatement of the employee there involved evidently did not follow the principle of law that if there is any evidence before the commission from which a conclusion can be drawn that the employee’s conduct is prejudicial to the service, the commission’s ruling will not be disturbed; and in failing to apply this principle of law in that case we now think we erred.”
Appellant was paid on a monthly basis and not on an hourly basis. His employment activities were left almost entirely to his discretion. That he wisely exercised his discretion is confirmed by the fact that Mr. Smith, a Parish Repair Superintendent, and Mr. White, Chief Construction Maintenance Engineer, testified that appellant discharged his duties more than adequately. In addition, Mr. Leger, head of the state wide equipment inspection, declared approval of Mr. Jones’ action of declining to proceed to Leesville on February 14, 1969. He concurred in Mr. Jones’ opinion that the heavy rains on that day would preclude equipment inspection. Appellant considered it his obligation to work an eight hour day. However, he noted that his employment was by its very nature irregular and that he was often precluded from merely clocking an eight hour day. In this connection it has been affirmatively demonstrated that weather, extensive travel, and difficulty in rendezvousing with equipment precluded fixed employment hours. It is significant that appellant’s home is his official station where he normally completes his paper work. To conclude that appellant was not engaged at work at home on the dates in question is wholly unsupported by direct evidence or by evidence corroborating lax work habits on the part of Mr. Jones. The Commission concluded that appellant’s day was scheduled to be an eight hour day. There is not one scintilla of evidence in the record that anything concerning appellant’s work was scheduled. On the contrary, the nature of appellant’s employment, as noted above, necessitated working irregular hours. Just to be at different points where equipment was located at 7:30 A.M. necessitated appellant leaving his home at varying hours depending on the distance to the inspection point. To contend that appellant’s travel time to and from work when it often exceeded two hours was not wholly or partially included in his work day is unrealistic. Moreover, there is evidence to indicate that appellant’s supervisors did not endeavor to strictly supervise appellant or to issue any directives other than what parish he should next proceed to for equipment inspection.
Should appellant find himself at 3:00 P.M. at one inspection point and one hour away from the next inspection point, his proceeding to the next inspection point would be a wasteful consumption of state gasoline if highway work ceased at 4:00 P.M. at the second inspection point. Thus, to require appellant to merely clock an eight hour day between 7:30 A.M. and 4:00 P.M. would prejudice the efficiency of the service rather than enhance its efficiency. The efficient conduct of appellant’s job requires flexibility. The very fact there is no evidence of express directives to appellant as to his hours and concerning a work schedule is indicative of the recognition that appellant’s job requires flexibility. We therefore concluded that even if the Commission’s conclusion that appellant had a scheduled eight hour day were supported by some evidence in the record, such conclusion would not justify dismissal for there would still be no legal cause for removal absent a showing that noncompliance with the schedule resulted in impaired efficiency of the service. Appellant’s listing of a work day on his pay roll sheet on the days in question as 7:30 A.M. to 4:00 P.M. was merely a formality since appellant was paid on a monthly basis and since Mr. Leger testified that an inspector is not docked for working less than eight hours per day. *922 There is no showing whatsoever of an intent to defraud the Highway Department on the part of appellant in turning in his pay roll sheets.
This court will next consider appellant’s alleged claim and collection of expense reimbursements to which he was not entitled. In this respect this court is referred to a State Director’s Policy and Procedure Memorandum No. 48 Subject: Travel Regulations. The Travel Regulations state:
VII. MEALS AND LODGING-TRAVEL IN-STATE AND ADJACENT STATES:
A. An employee traveling on official State business in the State of Louisiana or bordering states will be reimbursed for meals and lodging at a rate not to exceed:
% j{c ‡ * ‡ ‡
2. A traveler may be reimbursed for meals based on the following schedule:
Breakfast — When travel begins before 6:00 A.M. and extends beyond 10:00 A.M.
Lunch — When travel begins before 10:00 A.M. and extends beyond 3:00 P.M.
Dinner — When travel begins before 3:00 P.M. and extends beyond 7:00 P.M.
Appellant allegedly made the following unauthorized claims for lunch money (1) February 6, 1969, $1.68 when he worked from 6:30 A.M. to 3:00 P.M.; (2) February 7, 1969, $1.53 when he worked from 6:30 A.M. to 11:10 A.M.; (3) February 10, 1969, when he worked from 6:30 A.M. to 1:30 P.M. and (4) February 14, 1969, $1.22 when he worked from 6:30 A.M. to 1:15 P. M. It is contended that appellant’s work day cannot be considered to have commenced until 7:30 A.M. Such contention is unrealistic since a significant portion of appellant’s time is consumed in traveling to inspection points. To conclude that apel-lant is not entitled to breakfast if he works from 6:30 A.M. to 3:00 P.M., 11:10 A.M., 1:30 P.M. and 1:15 P.M., respectively, but is entitled to breakfast if he works from 6:00 A.M. to 10:00 A.M. would be a technical absurdity not contemplated by the drafters of Memorandum No. 48. The spirit of Memorandum No. 48 was complied with insofar as appellant did not claim reimbursement for a meal unless he was on the job during such hours and for such period of time as his work efficiency would be impaired if he continued without food. Conceding that appellant did violate the letter of Memorandum No. 48 with regard to February 7, 10 and 14, 1969, such violation does not in itself suggest fraud. It has long been held that to establish fraud in a case such as this one must demonstrate intent to defraud. Boucher v. Division of Employment Security, Department of Labor, La.App., 169 So.2d 674. There is absolutely nothing in the record by which this court could possibly infer intent to defraud the State of the $6.11 involved on the four cited days. There was no showing whatsoever in the record that appellant knew or should have known of Memorandum No. 48 nor that he knew or should have known that such an unreasonable strict construction would be suggested with regard to such memorandum.
It is hereby ordered, adjudged and decreed that appellant be reinstated as Highway Equipment Superintendent I with full rights accruing to that position before and since dismissal. It is further ordered that this matter be remanded to the Civil Service Commission for a determination as to the amount, if any, to which appellant is entitled for lost wages.
Reversed and remanded.