LANDRY, Judge.
Plaintiff appeals a decision of the State Civil Service Commission (Commission) upholding plaintiff’s dismissal from the position of Locker Plant Manager, Louisiana State Penitentiary, a classified employment protected by our Civil Service Law. The Commission found that Appellant was discharged for violating prison security rules governing supervision of inmate trustees assigned to outside duties and permitting a prisoner to bring contraband, namely, money, into the prison in violation of express prison rules and policy. We affirm.
By letter dated June 14, 1971, Appellant’s employer notified Appellant of Appellant’s dismissal, effective the close of business June 20, 1971, because of each and all of the following alleged infractions:
“1. You did on April 20, 1971, allow inmate Paul “Rock” Cheramie to deliver and sell to Mr. M. E. Hurst of Thomas Scrap Metal, Scenic Highway, 350 pounds of copper for the sum of $119 or 34^ per pound, some nine cents per pound less than the State Contract price. This delivery was made in a completely unauthorized manner and after you had informed Deputy Warden Hoyle prior to the shipment that there were less than 150 pounds of copper on the premises.
2. Although you knew that the contract price was 43^ per pound and that *653 Thomas Scrap Metal was required to pay for all metals purchased by check to the Division of Administration, you not only allowed this transaction, but pointed out to the inmate driver the name of the person with whom he was ‘to do business’ on this April 20th trip and later divided the money received with the inmate.
The above two items are not only contrary to Penitentiary regulations, but contrary to the public good and a violation of Louisiana Statutes.
3. On April 20, 1971, while on a trip from the Penitentiary to Baton Rouge and return, you violated Louisiana State Penitentiary Rules #1 and #2 and Louisiana Revised Statutes 14.402 and failed to enforce inmate regulation Article II Paragraph 6 by allowing an inmate under your control, and for whom you were responsible, to purchase items with unauthorized currency, and allowed the transportation of currency, or attempted to allow the transportation of currency, into the Louisiana State Penitentiary and by failing to report this wrongdoing. These rules prohibit possession of contraband including currency and provide for the immediate reporting of all violations of regulations. The inmate regulations likewise forbids possession of currency and requires • confiscation of such.
4. On April 20, 1971, you violated Rule 16 of the Louisiana State Penitentiary in that while on a trip to Baton Rouge you left inmate Paul “Rock” Cheramie (who was assigned to your specific supervision) unattended, unguarded and out of your custody by leaving him, completely free of control, at Hernandez Ice Company on Scenic Highway while you made a trip to Sylvester’s on the Airline Highway.
S.On April 16, 1971, you removed, or caused to be removed, two 500-foot rolls of copper wire from Locker No. 3 of the Cold Storage Plant, the official supply room, to Penitentiary Truck No. 47. You subsequently moved or caused the wire to be removed from the state truck to your house where it was observed under the front seat of your private truck. Following the unauthorized and improper removal of this wire and after the incidents of April 20, 1971, you had this wire, or similar wire, returned to its proper place.
The Commission made the following relevant findings of fact: A building at the penitentiary was being remodeled and material had been removed therefrom to be sold as scrap, including a substantial quantity of copper coils. On the afternoon of April 19, 1971, a large truck was loaded with scrap f-rom various areas of the prison, which scrap was to be sold to Thomas Scrap Yard, Baton Rouge, Louisiana, the following day. After loading, the truck was weighed in at 31,020 pounds. Subsequently, two inmates added a considerable quantity of copper coils in burlap bags. The following day, the scrap truck was driven to Baton Rouge by Cheramie, under supervision by Appellant, who preceded Cheramie in Appellant’s privately owned pick up truck. On arriving at the scrap dealer’s, Appellant left the weighing of the truck to Cheramie. When weighed, to consummate the sale, the weight was found to be 31,740 pounds. After weighing, but before the truck was taken to the unloading area, Cheramie unloaded the sacks of copper coils by placing them on the ground. The sacks were then picked up and loaded onto a pick up truck belonging to the scrap dealer. The truck containing the copper was then weighed and Cheramie given $119.00 in cash for 350 pounds of copper. Appellant and Cheramie then drove to Louisiana State University in Appellant’s pick up truck where they remained several hours during which Appellant supervised *654 the slaughter of animals destined for use at the penitentiary. After leaving the University, Appellant drove Cheramie to a service station where the scrap truck had been left for tire repair, following which Cheramie returned to the penitentiary. At some time during the day, Appellant allowed Cheramie to go to a drugstore and purchase cigarettes, cigars, and snuff in the amount of about $12.00 for which Chera-mie paid with part of the money acquired in the sale of the copper. Upon returning Cheramie to the scrap truck to drive the vehicle back to the penitentiary, Appellant ordered Cheramie to wait at a designated place while Appellant went elsewhere to pick up a purchase. When Cheramie arrived at the penitentiary, his vehicle and person were searched. A slip for the sale of the copper was found on Cheramie’s person. A quantity of cigarettes, cigars and snuff were found in Cheramie’s truck and $40.00 in cash discovered under the vehicle’s floor mat. A search of Appellant and his vehicle disclosed Appellant possessed about $2.00 in cash.
The Commission absolved Appellant of complicity in the theft of the copper, but determined Appellant violated General Prison Rule 16 which provides that when taking inmates on special or emergency trips, the escorting officer assumes full responsibility for the inmates under his supervision. In this regard, the Commission found that at some time during the day, Appellant left Cheramie unsupervised in the weighing and unloading of the truck at the scrap yard, thus enabling Cheramie to effect the theft. The Commission also found that at some point during the day, Appellant relaxed his supervision of Cheramie thus allowing the inmate opportunity to purchase items with contraband, namely, money. This action, the Committee found to be in violation of Inmate Rule 11-06 which prohibits an inmate from having contraband, money included, in his possession, and also in violation of LSA-R.S. 14:402 and General Prison Rule 2 which proscribe introduction of contraband into the penitentiary. Appellant was also found to be in violation of Prison Rule 1 which requires the mandatory reporting of the violation of any prison regulation or rule.
Appellant maintains the Commission erred in the following respects: (1) Finding that Appellant failed to maintain proper supervision of the inmate, Cheramie; (2) concluding that Appellant allowed Cheramie to enter the prison with contraband obtained from the sale of scrap belonging to the prison; (3) finding that Appellant allowed Cheramie to enter a store to purchase items with contraband (money), and holding that such action constituted ground for dismissal; (4) determining that Appellant allowed Cheramie out of his sight while Appellant attended to the personal chore of picking up personal attire from a store; (5) denying Appellant opportunity to introduce evidence of Appellant’s good character and work record, and (6) holding that the action of Appellant constituted adequate cause for dismissal. Appellant also contends it was common practice to allow inmates to have money while engaged on missions outside the prison, and to discharge him for this reason was arbitrary and capricious.
It is well settled that the decisions of the Commission on issues of fact are binding upon the courts on appeal. La. Const, art. XIV, § 15(0) (1); Jones v. Louisiana Department of Highways, 237 So.2d 916.
A state classified employee appealing disciplinary action imposed by his appointing authority bears the burden of proving that the action complained of was not for cause or was arbitrary and capricious. La.Const. art. XIV, Section 15 (N) (1); Suire v. Louisiana State Board of Cosmetology, La.App., 224 So.2d 7.
The testimony of Cheramie and his fellow inmates, Cecil Creel and Joe Vincent, establishes that on or about April 19, 1971, Appellant instructed them to cut the copper tubing out of the prison cold storage plant *655 which was then being remodeled. They were told that the scrap truck would be loaded on the 19th of April with scrap from various parts of the prison and brought to the cold storage area that night. The prisoners were told to load the tubing on the truck in sacks because Appellant was going to sell the copper the following day. The authorities at the prison were alerted to the impending theft. Upon instructions from the Deputy Warden, Lloyd W. Hoyle, an employee of the prison, Joe Pittman, Correctional Officer, was sent to inspect the truck on the night of April 19, to see if the copper were in fact aboard. After ascertaining the copper was on the truck, Pittman and Associate Warden Hayden Dees were ordered to follow the scrap truck the next morning and observe its movements. Other prison employees were alerted and instructed to search the truck on its return to the prison.
Cheramie’s testimony may be summarized as follows: He and Appellant were to share the money received from the sale of the tubing. On the morning of April 20th, he drove the truck to the scrap yard in Baton Rouge. The truck was weighed, then driven a short distance into the scrap yard and stopped. Cheramie threw off several sacks containing the copper tubing which was picked up by Hurst, an employee of the scrap yard, and placed in a pick up belonging to the establishment. The pick up truck was then driven to the scale and weighed following which Hurst gave Cheramie a receipt showing a $119.00 sale from Hurst to the scrap yard, and the sum of $119.00 cash. Cheramie attempted to give the money to Appellant who first complained the amount was unsufficient, and secondly, ordered Cheramie to keep the money until later. Cheramie then reminded Appellant that the scrap truck had a bad tire which needed fixing. The scrap truck was then taken some place to have its tire fixed. From this point, Cheramie went to L S U with Appellant in Appellant’s truck. En route to the University, Cheramie gave Appellant half of the money received from Hurst. After completing several hours work slaughtering cattle at L S U, Appellant drove to a service station where Appellant had the tires changed on Appellant’s personally owned vehicle. While the tires were being changed, Cheramie purchased cigarettes, cigars and snuff from a nearby drug store. Cheramie left in the scrap truck ahead of Appellant who told Chera-mie that Appellant was going to pick up some boots Appellant had ordered, and that Appellant would catch up with Cheramie later on. Cheramie then drove to the prison. On arrival, he was apprehended with the sales slip in his pocket and the money, cigars, cigarettes and snuff hidden in the truck.
In essence, Pittman and Hoyle stated they followed Appellant and Cheramie to the scrap yard on the morning in question. They parked their vehicles on the street some distance away and obsérved the scrap truck being weighed near the entrance. Pittman testified that from his vantage point, he could not see the scrap truck after it was moved off the scale. Hoyle testified, however, that from where he was positioned, he saw the scrap truck after it was moved from the scale. He observed the truck stop and saw Cheramie jettison the sacks of copper. He also noted that Appellant was in such position at this time that he could have seen Cheramie throwing the sacks of copper to the ground.
Appellant denied any complicity or involvement whatsoever in the theft. He testified that after the scrap truck was weighed, he remained in the nearby office while Cheramie drove to an unloading area some distance away. Appellant also denied seeing Cheramie unload the copper. He attempted to establish that it was common practice to permit inmates assigned to outside duties to have money in their possession, and that in dismissing him for such activity, his employer was arbitrary and capricious. No useful purpose would be served by detailing the testimony of the various witnesses on this factual issue. It suffices that numerous prison employees in- *656 eluding Pittman, Hoyle, Associate Warden Hayden Dees, Chief Security Officer Major Bryan, Farm Manager Henry L. Han-chey and Agricultural Business Manager, Ross Maggio, all testified that except for ambulance drivers, it was strictly against prison rules for inmates to have cash money in their possession at any time. Appellant concedes he gave Cheramie permission to buy some snuff from the drug store. He contended, however, this was a normal practice, and that he did not know Cheramie intended such a volume purchase.
Appellant further testified it was common practice to allow inmates to have money in their possession when assigned to outside duties. Appellant’s wife, an employee of the prison, testified likewise. A former employee, Patrick Grant, stated that while employed at the prison, he knew of one inmate under his supervision having money in his possession, but that he, Grant, did not report the rule infraction.
On the question of duty of supervision and control required of Appellant by prison rules, the above named prison officials testified in effect that it is the duty of the prison employee to closely control the activities of the inmates at all times. It appears beyond question that the normal procedure is to keep prisoners in view at all times whenever possible and practicable under the circumstances. Some of the officials even testified that if a prisoner in their charge went to the bathroom, the official would stand outside the door.
We find that the record contains evidence to support the Commission’s finding that the loose supervision exerted by Appellant in this instance enabled the prisoner to perpetrate a theft of state property. We likewise find that the record contains evidence supporting the Commission’s conclusion that Appellant knew Cheramie possessed contraband, namely, money, and did not report this infraction. In this regard, we note, among other evidence in the record, Appellant’s admission that Cheramie requested and was granted permission to purchase snuff at the drug store. These crucial findings of fact are binding upon the court.
Nothing in the record even remotely suggests that Appellant’s discharge was arbitrary or capricious. Considering that security, as regards inmates both internally and on outside assignments, is of paramount concern to a penal institution, we find that dismissal for violation of security regulations, as shown in this instance, constitutes reasonable ground for dismissal of the offending employee.
We find no material or reversible error in the refusal of the Commission to permit Appellant to introduce evidence of his former good character and efficient work record. Where lawful grounds for dismissal exist, the character and work record of the employee involved is of no importance.
The decision of the Commission is affirmed at Appellant’s cost.
Affirmed.