COLE, Judge.
The main issue in this Civil Service Commission ease is whether or not the appointing authority proved by a preponderance of the evidence that the employee, Mark Sample, was asleep while on duty as a prison guard.
The facts are as follows: Mark Sample was employed as a Correctional Security Officer III at the Juvenile Reception and Diagnostic Center (JRDC). On July 2,1981, he was the supervisor of the night shift at the Juvenile Adjustment Center (JAC), a maximum security unit for young men age 15 to 20. In the early morning hours of July 2, the supervisor in charge of security, Officer Craig' Johnson, made a random check of the facility. When he entered the JAC he found that of the four officers on duty, three appeared to be asleep. In particular, Mark Sample was found to have been leaning back in a chair so that the front two legs were off the floor. His head was resting against a windowsill behind him, his chin in his hand, his face turned upward and his eyes closed. Officer Johnson observed Sample in this position for approximately two minutes. He walked over to Sample and then dropped a metal chair on the floor. Upon hearing the sound, Sample moved from his reclined position.
In a letter dated July 13, 1981, Sample was informed of his dismissal due to his being found asleep while on the job. The dismissal was effective July 21. Mr. Sample timely filed a letter of appeal to the Civil Service Commission, arguing he was not asleep, and alternatively, even if he was asleep, the penalty imposed was too severe.
Although the issue involved in this case is narrow, the hearing on the matter was so lengthy as to require 182 pages of transcribed testimony. Only a fraction of this testimony was related in any remote way to the issue at hand. The remainder was totally irrelevant or exceedingly repetitious.
All witnesses agreed as to Mr. Sample’s physical position, as described herein. Sample admitted his eyes were closed when Officer Johnson entered the room, but contended he was not asleep. He maintained it would have been impossible for him to sleep with his chair in that position, and in fact he often relaxed in that position knowing that if he fell asleep he would fall forward. Another guard on duty during the same shift, James Baker, testified no one on that shift had been sleeping. Elizah Jenkins, also on duty at the time of the incident, testified Mr. Sample had been in the described position, with his eyes closed, for approximately ten minutes before Officer Johnson entered the room. He said he observed no obvious signs that Sample was sleeping, i.e., he heard no snoring or heavy breathing.
Officer Johnson, on the other hand, testified Sample gave the appearance of being asleep and Sample did not notice his presence until the chair was dropped nearby. An employee accompanying Johnson on the inspection, Sonny Bah, testified he was unsure as to whether or not any guards were sleeping at the time. However, Mr. Bah admitted that at the time of the inspection he was quite disturbed about the recent death of his wife and could not recall the details of the incident.
After reading the transcript it is apparent the question as to whether or not Mr. Sample was actually sleeping is one of credibility. We agree with the referee that the facts indicate, more probably than not, Mr. Sample had fallen into a light sleep. Although his chair was in a rather precarious position, it is entirely possible he could have slept for a short while, since his head was resting on a windowsill behind him, thus giving him the needed support. The standard for review of a decision on appeal from the Commission is the same standard used in reviewing judgments of other courts: The factual determinations of the Commission will not be set aside unless they are found to be manifestly erroneous. Albert v. Louisiana, State Penitentiary, 396 So.2d 340 (La.App. 1st Cir.1981). As always, when the key issue is credibility, we are even more deferent to the trier of fact. This is so because the trier of fact is able to observe first hand the demeanor and character of the witnesses. See Young v. Dept. of Health and Human Resources, 405 So.2d *1213 1209 (La.App. 1st Cir.1981), writ denied, 407 So.2d 749 (La.1981). Therefore we decline to disturb this finding of fact.
Appellant brings up several other minor issues. First, he contends the referee erred in refusing to admit evidence of appellant’s truthfulness and veracity. Where lawful grounds for dismissal exist, the character and work record of the employee involved is of no importance. Butler v. Department of Corrections, La. State Pen., 271 So.2d 651 (La.App. 1st Cir.1972), writ refused 273 So.2d 846 (La.1973).
Appellant further contends the referee erred in allowing portions of his work record (showing prior reprimands) into evidence, while refusing to admit his “entire” record. We find the facts surrounding this argument a bit unusual. In the first place, the prior reprimands were brought up not by counsel for the appointing authority, but by counsel for appellant. He called as a witness, Carolyn McGougan, the superintendent of the JRDC. She testified Sample had a “satisfactory work record” and was then asked (on direct, by appellant’s attorney) about prior reprimands. In fact, the appointing authority objected to the question.
It was later in the hearing that appellant’s counsel wished to subpoena another file, the “personnel file.” The referee denied the request, noting that appellant had ample time to subpoena the file before the hearing.
We find the referee acted properly in the denial of this subpoena. Further, as we have mentioned above, the appellant’s prior work record is immaterial so long as there was lawful cause for the disciplinary action taken. Ann Tillman, a personnel technician for the Department of Corrections and the individual responsible for processing the discipline letters, testified it was department policy that when a correctional officer was found sleeping on the job, the action taken was always termination of employment. This was done routinely without regard to the individual’s work record.
For the foregoing reasons, we affirm the decision of the Commission. Costs are to be paid by appellant.
AFFIRMED.